**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5562-17

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

WOODROW MILLER,

     Defendant-Appellant.

_____

Argued October 7, 2019 – Decided November 13, 2019
Remanded by Supreme Court June 1, 2021.
Resubmitted June 22, 2021 – Decided July 12, 2021

Before Judges Fasciale, Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 10-06-1174.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the briefs).

PER CURIAM

We previously reversed a May 24, 2018 order denying defendant's petition for post-conviction relief (PCR). See State v. Miller, No. A-5562-17 (App. Div. Nov. 13, 2019) (concluding defendant's trial counsel rendered ineffective assistance by failing to conduct a meaningful pre-trial investigation). On September 9, 2020—while the State's petition for certification was pending—the Supreme Court granted the State's motion to remand the matter to the trial court to conduct a "supplemental [PCR] evidentiary hearing, to make factual findings regarding . . . new information and material provided to the Supreme Court in the first instance." The Court retained jurisdiction because "the petition for certification and [the State's] motion to expand the record remain[ed] pending."

On remand to the trial court, the PCR judge took testimony from several witnesses, considered documentary evidence, and rendered written findings of fact. The judge explained that she needed to determine if defendant's trial counsel consulted a forensic pathologist in defense of the charges, and whether counsel "requested and was denied permission by the Office of [the] Public Defender [(OPD)] to retain a forensic pathologist."[1] With this focus, the judge

_____

[1] In our previous opinion—which the State did not challenge on remand—we pointed out that the ineffectiveness included not consulting or calling other

found that the OPD retained Mark L. Taff, M.D., a forensic pathologist, but that there existed "no evidence that [defendant's trial counsel] requested the retention of a second expert in the field of forensic pathology in accordance with OPD's guidelines, nor was a second forensic pathologist in fact consulted or retained in [d]efendant's case."

On June 1, 2021, the Supreme Court granted the State's petition for certification, and summarily remanded this matter to us to reconsider our November 13, 2019 judgment "in light of the [PCR] judge's remand opinion and the record, as expanded" by the Court. We permitted counsel to submit simultaneous merits briefs addressing their respective positions on this remand.

On this remand, the State argues:

> POINT I
>
> THE REMAND [JUDGE'S] FINDINGS UNEQUIVOCALLY DEMONSTRATE THAT TRIAL COUNSEL CONSULTED WITH A FORENSIC EXPERT.
>
> > A. Dr. Mark Taff, M.D., Authored A Report And Consulted With Trial Counsel Prior To The Commencement Of [Defendant's] Trial.

experts too, such as a forensic psychologist, a blood-spatter expert, and a ballistics expert. Id. at 14-20. These failures were part of the inadequate pre-trial investigation as explained in our prior opinion. Ibid.

3

B. Trial Counsel Was Not Required To Consult
With Or Retain A Second Expert.

i.    [Defendant] is barred from raising this issue for the first time on remand.[2]

ii.    [Defendant] has provided no evidence that trial counsel was required to retain a second expert.

Having considered the expanded record and new findings, especially as to the PCR judge's findings that defendant's trial counsel failed to follow OPD protocol when pursuing expert opinions, we remain convinced that defendant received ineffective assistance of counsel.

The expanded remand record demonstrates that the OPD initially retained Hope Mitchell to represent defendant. The PCR judge found her credible. She testified that she hired Dr. Taff and he submitted a report, which she remembered being in defendant's file when trial counsel, then a pool attorney, took over for her as defendant's trial counsel due to a conflict of interest. When the OPD

---

[2] The State's assertion that defendant is barred from raising the issue of whether trial counsel was required to consult a second expert is misplaced. The Supreme Court remanded this case to the PCR judge for additional findings of fact regarding defendant's counsel's purported discussions with Dr. Taff ahead of trial. The PCR judge determined that trial counsel failed to follow OPD guidelines to retain a second expert. The issue is therefore properly before us on appeal.

4

transferred the file to trial counsel, Mitchell discussed the case with him, including Dr. Taff's report. Indeed, trial counsel—who the PCR judge also found credible—testified that he reviewed the report of Dr. Taff and "recalled that it was not helpful to [d]efendant." On remand, the report could not be located. Trial counsel remembered consulting with Dr. Taff in preparation for the trial. We have no reason to second guess the PCR judge's finding that trial counsel consulted with Dr. Taff in preparation for the trial.[3]

Accepting that trial counsel consulted Dr. Taff in advance of the trial, we remain steadfast in our conclusion that trial counsel rendered ineffective assistance of counsel by failing to call an expert, particularly a forensic pathologist, to testify at trial, instead relying on his ability to cross-examine Dr. Shaikh. And as we previously noted, trial counsel's cumulative errors, including the failure to call or consult a blood-spatter, ballistic, or psychological expert—especially where time and manner of death were at issue—denied defendant a fair trial.

---

[3] We do point out, however, that in our previous opinion, we stated that trial counsel, who testified at the first PCR hearing, "could not recall whether he ever consulted—informally or formally—with a forensic pathologist in this case." Id. at 15. This is different than his testimony during the remand hearing, but we will not second guess the judge's credibility findings.

A-5562-17

Additionally, as the PCR judge found, trial counsel testified that he had an informal conversation about "the retention of a second expert" with Joseph Russo, who was at that time an assistant public defender in charge of the statewide appellate section of the OPD. Russo did not recall having that conversation but testified during the remand proceedings about the OPD guidelines for retaining experts. Trial counsel testified that he was familiar with the requirements and admitted that he had failed to submit written requests for an expert. The PCR judge explicitly found that trial counsel failed to follow the guidelines.

> This [PCR judge] finds that [trial counsel] failed to properly request the retention of a second forensic pathologist in [d]efendant's matter, in contravention of the OPD [g]uidelines. Section VIII of the New Jersey [OPD] Pool Attorney Guidelines provides, "[n]o expert or other service provider may be retained without prior written approval from Public Defender Management through Regional Deputy Defender or Managing Attorney. A request to hire an expert not routinely used by the [OPD] should be accompanied by a copy of the expert's curriculum vita[e]."

Although the witnesses provided more detail about the guidelines for retaining an expert, we have no reason to second guess the PCR judge's finding that trial counsel did not properly make the request. Indeed, the PCR judge further found that "there is no evidence presented that any due diligence was conducted for

6

the purpose of obtaining a second expert." Importantly, the PCR judge found there was no evidence that "a second forensic pathologist [was] in fact consulted or retained in [d]efendant's case."

This is not a situation where counsel's ineffectiveness amounts to solely a failure to consult with or retain a second pathologist. As we pointed out in our earlier judgment, "neither side undertook a psychological investigation of the victim, including her diary entries." Id. at 20. As part of his petition for PCR, defendant produced testimony from and a report by a forensic pathologist and neuropathologist, Dr. Zhongxue Hua, M.D., PhD. As to Dr. Hua, we quote from our previous opinion.

> Dr. Hua said that the death was not a homicide. Based on the available investigative material, he instead concluded that the manner of death was indeterminate. He noted the police investigation was poorly executed because there was no DNA analysis, ballistic testing, nor blood-[spatter] analysis. He said that it was undetermined whether the single "recovered projectile could be from either the fatal shot to [the victim's] head, the non-fatal shot to [the victim's] left hand, or [the] non-fatal shot to [defendant's] left forearm."
>
> Dr. Hua said it was possible that three shots were fired from the gun: into defendant's left forearm, into the victim's left hand, and into the victim's head. He indicated that the State did not measure the distance from the wound to the victim's hand, and that it was not examined properly or addressed by "gross examination,

7

histopathology examination, and/or gunpowder residue testing." He noted that Dr. Shaikh did not perform a histopathology to determine the age of the victim's bruises to rule out "the probability of any pre-existing bruises," which Dr. Hua stated could have "occurred before, during, or after [the victim's] two gunshot wounds."

Dr. Hua admonished Dr. Shaikh [the State's pathologist] for disregarding the diary before or during a final determination of the manner of death. Dr. Hua emphasized that Dr. Shaikh dismissed the notebooks without offering any scientific basis or forensic reasoning. Instead, Dr. Hua recommended a formal consultation regarding the books with a forensic psychologist or psychiatrist. He said Dr. Shaikh ignored the victim's state of mind, and that his conclusion as to the manner of death was simply "wrong."

Dr. Hua examined over 300 photographs and placed significant importance on three, which depicted the clothing that defendant wore during the shooting. Blood drips appeared only on the left side, which Dr. Hua found significant because defendant's gunshot wound was on that side. But Dr. Hua believed that the pictures did not support the State's theory—that defendant had the victim in a headlock and shot her. According to Dr. Hua, if that theory was correct, blood-[spatter] would have appeared on the right side of his clothing. The physical evidence therefore did not show that defendant—as the State contended—laid on top of the victim, placed the victim in a headlock, and shot her on the right side of her head.

Although Dr. Shaikh opined that the death was instantaneous, Dr. Hua said that, scientifically, that could not be correct. Dr. Hua explained that there was

8

no direct damage to the main portion of the victim's brain structure, meaning that involuntary breathing and blood circulation would have continued after the head wound. Indeed, defendant told the 9-1-1 dispatcher that the victim was still breathing, and the record reflects that hospital personnel treated her for hours. Dr. Hua concluded that the bruising could have occurred after the victim was shot. According to Dr. Hua, the timing of the victim's neck wounds would have been common knowledge to qualified medical examiners.

Trial counsel also testified at the PCR hearing, verifying that his defense was that the victim committed suicide. Even though trial counsel conceded that Dr. Shaikh was not a "strong expert," he did not consult a blood-[spatter] expert. He admitted that a blood-[spatter] expert would have helped the defense to show where defendant was standing when the victim shot him, and he stated that he did not consult ballistic or psychological experts.

. . . .

. . . Dr. Hua arguably undermined the scientific basis for Dr. Shaikh's opinions as to the manner and the time of death due to the lack of forensic evidence. He stressed the importance of blood only appearing on the left side of defendant's clothing, indicating that defendant was shot in the arm while standing. Dr. Hua emphasized that the absence of blood-[spatter] on defendant's right side signified he was not laying on top of the victim, as the State contended. And he highlighted the victim's own words in her diary in which she stated she wanted to kill herself and defendant. Such evidence would have likely raised reasonable doubt even before introducing rebuttal testimony from a forensic psychologist, a ballistic expert, or a blood-[spatter] expert.

9

[Id. at 8-16]

We are troubled by the PCR judge's written findings of fact pertaining to the informal conversation trial counsel had with Russo about retaining or consulting with a second pathologist. Trial counsel remembered the conversation; Russo did not. Even though counsel testified he talked to Russo about "the retention of a second expert," the PCR judge stated that whether the conversion occurred was "of no moment." Instead, the PCR judge stated that "[i]f [trial counsel] believed that a second expert should have been retained," [counsel] did not follow the protocol for doing so. That begs the question of whether trial counsel believed consulting with a second expert was warranted.

Under the totality of the circumstances of this case, however, we conclude trial counsel's failure to call a forensic pathologist and failure to properly request second pathologist amounted to ineffective assistance of counsel, which determination is further supported by trial counsel's failure to consult with a forensic psychologist, a ballistic expert, or a blood-spatter expert, as we explained in our prior decision.

Having considered the remand proceedings, the supplemented record, and the PCR judge's findings of fact, we stand by our earlier determination and remand for a new trial.

10

Reversed and remanded for a new trial.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION